UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RUDOLPH NURSE,

                                                  Plaintiff,

                -against-

THE CITY OF NEW YORK, SERGEANT FRITZ GLEMAUD, shield # 3224, DETECTIVE PETER HOEFLINGER, shield # 3870, DETECTIVE ANGELO CUOZZO, shield # 1628, DETECTIVE WILLIAM WARREN, shield # 2757, DETECTIVE VIRGIL CUMBERBATCH, tax # 897278, AND UNDERCOVER OFFICER #207,

                                                 Defendants.

------------------------------------------------------------------------ x

**FIRST AMENDED COMPLAINT**

CV 14 3778 (KAM) (LB)

Jury Trial Demanded

## PRELIMINARY STATEMENT

1. Plaintiff brings this civil rights action against the City of New York and several New York City Police Officers of Narcotics Borough Brooklyn North regarding two separate arrests and prosecutions.

First, plaintiff alleges that, on June 5, 2012, defendants violated his rights under 42 U.S.C. § 1983, the Fourth and Sixth Amendments to the United States Constitution and New York state law by falsely arresting him, using unreasonable force on him, illegally strip searching him, denying him a fair trial and maliciously prosecuting him. The false criminal charges relating to the June 5, 2012 arrest were dismissed on January 21, 2014 after plaintiff was found not guilty after trial.

Second, plaintiff alleges that, on August 29, 2012, defendants violated his rights under 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution by falsely arresting him, using unreasonable force on him, illegally strip searching him, denying

him a fair trial and maliciously prosecuting him. The false criminal charges relating to the August 29, 2012 arrest were dismissed on March 29, 2013.

For both incidents, plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his New York state law claims of malicious prosecution and vicarious liability which form part of the same case and controversy as his federal claims under Article III of the United States Constitution.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the incident in question occurred in this District.

## JURY TRIAL

5. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## NOTICE OF CLAIM

6. With respect to plaintiff's state law claims of malicious prosecution and vicarious liability relating to the June 5, 2012 arrest, a notice of claim was duly filed with the City within 90 days of the dismissal of the criminal charges brought under docket number 2012KN046711, more than 30 days have elapsed since such filing and the City has not offered to settle plaintiff's state law claims.

## PARTIES

7. Plaintiff is a United States citizen.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. The individual defendants are members of the New York City Police Department ("NYPD"). Defendants were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

**FIRST INCIDENT**

10. On June 5, 2012, at approximately 6:25 p.m., plaintiff was the vicinity of Hinsdale Street and Atlantic Avenue in Brooklyn, New York, obeying the law, when the defendants jumped out of an unmarked police car and ordered plaintiff to stop.

11. The defendants grabbed plaintiff and handcuffed plaintiff excessively tight causing pain and bruising to plaintiff's wrists.

12. One of the defendants conducted a pat down of plaintiff by putting his hand inside plaintiff's pants and moving plaintiff's genitalia.

13. The defendants arrested plaintiff although he had done nothing wrong and although no drugs were recovered from him.

14. Later, plaintiff learned that the defendants claimed that plaintiff had sold drugs to a homeless woman on the street.

15. After arresting plaintiff, the defendants placed him in a police van and took him to an unknown police precinct, possibly the 75th Precinct.

16. While plaintiff was held in the precinct, defendant Detective Hoeflinger, with the knowledge and approval of the other defendants, falsely charged plaintiff with Criminal Sale of a Controlled Substance in the Third Degree.

17. At the precinct, the defendants, acting in concert, illegally strip searched plaintiff by requiring plaintiff to strip nude, lift his genitals, squat numerous times, turn around several times, and to spread his buttocks and cough. This strip search was authorized by defendant Sergeant Glemaud.

18. The strip search was conducted in a non-private area of the precinct in front of several male officers and at least three other arrestees.

19. The strip search of plaintiff was illegal because there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, because plaintiff was not being placed in a general jail population at the time of the search, and because the strip search was not conducted privately.

20. Nothing illegal was recovered from plaintiff.

21. Instead of releasing plaintiff from custody, the defendants continued to threaten, harass, and intimidate plaintiff for several hours while other defendants went to court and applied for a search warrant authorizing a body cavity search of plaintiff.

22. After obtaining a warrant based upon fabricated testimony, some of the defendants transported plaintiff to Woodhull Hospital in Brooklyn, New York for an x-ray.

23. At all times during the transport and at the hospital, plaintiff was handcuffed.

24. At the hospital, defendants conspired to fabricate evidence against plaintiff alleging that the plaintiff threw a quantity of cocaine to the floor near his hospital bed.

25. Plaintiff was then transported to the 73rd Precinct.

26. On June 6, 2012, at approximately 2:55 a.m., plaintiff was processed at the 73rd Precinct and charged with Criminal Sale of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Third Degree, and other lesser and related charges.

27. Plaintiff was eventually taken to Brooklyn Central Booking.

28. While plaintiff was held in Brooklyn Central Booking, Detective Hoeflinger, with the knowledge and approval of the other defendants, maliciously initiated a prosecution against plaintiff by misrepresenting to prosecutors that plaintiff had sold and possessed a quantity of a cocaine and by signing a criminal court complaint containing the false allegations.

29. Plaintiff was arraigned in Criminal Court on June 7, 2012 and the presiding judge set bail.

30. Plaintiff was incarcerated for three or four days at Rikers Island Correctional Facility until his family posted bail.

31. Plaintiff was required to make numerous court appearances after his arraignment.

32. The false charges of criminal possession of a controlled substance were dismissed on January 21, 2014 after a jury found plaintiff not guilty.

33. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was incarcerated and suffered a loss of liberty, emotional distress, fear, anxiety, embarrassment, humiliation and pain and bruising.

**SECOND INCIDENT**

34. On August 29, 2012, between 4:00 p.m. and 5:00 p.m., defendants stopped and seized plaintiff while he was exiting a store in the vicinity of Atlantic and East New York Avenues in Brooklyn, New York.

35. Plaintiff was engaged in lawful activity at all relevant times.

36. Defendants grabbed plaintiff, threw him to the ground, and handcuffed plaintiff excessively tight causing pain and bruising to plaintiff's wrists.

37. After arresting plaintiff, the defendants placed him in a police vehicle and took him to the 73rd precinct.

38. At the precinct, defendants, acting in concert, commanded plaintiff to submit to a strip search by ordering plaintiff to strip nude, squat, spread his buttocks and cough. This strip search was authorized by defendant Sergeant Glemaud.

39. The order requiring plaintiff to submit to a strip search was illegal because there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes and plaintiff was not being placed in a general jail population at the time of the search.

40. In retaliation for plaintiff's refusal to submit to the strip search, one of the defendants grabbed plaintiff, slammed him down to the ground, and handcuffed him excessively tight.

41. Plaintiff was then handcuffed to a cell gate with his arms in the air for approximately four to five hours while the defendants obtained a warrant to conduct a body cavity search of plaintiff.

42. The defendants, acting in concert, fabricated testimony to obtain a search warrant authorizing a body cavity search.

43. Plaintiff was later transported to Woodhull Hospital in Brooklyn, New York where a body cavity search revealed he was not in possession of any contraband.

44. Plaintiff was eventually taken to Brooklyn Central Booking.

45. While plaintiff was held in Brooklyn Central Booking, defendant Detective Hoeflinger, with the knowledge and approval of the other defendants, maliciously initiated a prosecution against plaintiff by misrepresenting to prosecutors that plaintiff had possessed a quantity of a controlled substance and by signing a criminal court complaint containing the false allegations.

46. Plaintiff was arraigned in Criminal Court and the presiding judge set bail.

47. Plaintiff was incarcerated approximately for six days.

48. Plaintiff appeared in court several times until the false criminal charges were dismissed on March 29, 2013.

49. Plaintiff suffered damage as a result of defendants' actions on August 29, 2012. Plaintiff was incarcerated and suffered a loss of liberty, pain and bruising, emotional distress, fear, anxiety, embarrassment and humiliation.

## FIRST CLAIM
### (FALSE ARREST)

50. Plaintiff repeats the foregoing allegations.

51. Plaintiff did not commit a crime or violation at any time.

52. Despite plaintiff's innocence, the defendants arrested plaintiff or failed to intervene to prevent his false arrests on June 5, 2012 and August 29, 2012.

53. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for falsely arresting him on June 5, 2012 and August 29, 2012.

## SECOND CLAIM

### (UNREASONABLE FORCE)

54. Plaintiff repeats the foregoing allegations.

55. Defendants' physical force upon plaintiff or failure to intervene to prevent such force was objectively unreasonable and caused plaintiff pain and injury.

56. Accordingly, defendants are liable to plaintiff under the Fourth Amendment for using unreasonable force on him on June 5, 2012 and August 29, 2012.

## THIRD CLAIM

### (ILLEGAL STRIP SEARCHES)

57. Plaintiff repeats the foregoing allegations.

58. Defendants' two strip searches of plaintiff in the precincts were illegal because there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, because plaintiff was not being placed in a general jail population at the time of the searches, and because the strip searches were not conducted privately.

59. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for illegally strip searching him on June 5, 2012 and August 29, 2012.

## FOURTH CLAIM

### (DENIAL OF A FAIR TRIAL)

60. Plaintiff repeats the foregoing allegations.

8

61. Defendants' misrepresentations about plaintiff to prosecutors deprived plaintiff of liberty because plaintiff was incarcerated and required to appear in court after the misrepresentations were made.

62. Accordingly, defendants are liable to plaintiff under the Sixth Amendment for denying him a fair trial related to plaintiff's arrests on June 5, 2012 and August 29, 2012.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION)

63. Plaintiff repeats the foregoing allegations.

64. Defendants maliciously misrepresented to prosecutors that plaintiff had committed crimes on June 5, 2012 and August 29, 2012, and initiated two separate prosecutions against him or played a role in initiating the prosecutions against him.

65. Defendants' misrepresentations deprived plaintiff of liberty because he was incarcerated and required to appear in court after his arraignment.

66. The criminal cases filed against plaintiff were ultimately dismissed.

67. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for malicious prosecution.

## SIXTH CLAIM

### (FAILURE TO INTERVENE)

68. Plaintiff repeats the foregoing allegations.

69. Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

70. Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights on June 5, 2012 and August 29, 2012.

## SEVENTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

71. Plaintiff repeats the foregoing allegations.

72. The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

73. The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiff.

74. Upon information and belief, the City of New York, at all relevant times, was aware that the defendants are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

75. Specifically, the defendants have been sued on numerous prior occasions in lawsuits alleging civil rights violations and police misconduct.

76. Despite the above, the City exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline and monitor the defendants and other officers like them.

77. The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

## EIGHTH CLAIM

### (MALICIOUS PROSECUTION UNDER STATE LAW)

78. Plaintiff repeats the foregoing allegations.

79. Defendants maliciously misrepresented to prosecutors that plaintiff had committed a crime on June 5, 2012 and initiated a prosecution against him or played a role in initiating a prosecution against him.

80. The criminal case filed against plaintiff was ultimately dismissed.

81. Accordingly, the defendants are liable to plaintiff under New York state law for malicious prosecution.

## NINTH CLAIM

## (VICARIOUS LIABILITY CLAIM AGAINST CITY OF NEW YORK)

82. Plaintiff repeats the foregoing allegations.

83. The individual defendants were acting within the scope of their employment as members of the NYPD when they maliciously prosecuted plaintiff.

84. Accordingly, the City of New York is vicariously liable to plaintiff under New York state law for malicious prosecution based upon the June 5, 2012 arrest of plaintiff.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Attorney's fees and costs;

    d. Such other and further relief as the Court may deem just and proper.

DATED:     December 11, 2014

/s/
_____
IZABEL OLSZOWA GARCIA
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(646) 239-4330

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(718) 624-9391